IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| THOMAS P. FURMAN | : CIVIL ACTION |
| --- | --- |
| | : |
| v. | : |
| | : NO. 17-3175 |
| UNITED STATES SMALL BUSINESS | : |
| ADMINISTRATION | : |

MEMORANDUM

**KEARNEY, J.**                                                                                       **October 12, 2017**

Lenders evaluating whether to extend a loan to a small business may seek a guaranty from the United States Small Business Administration covering its losses after it exhausts attempts to recover from the defaulted borrower. The lender is allowed to ask the borrower to pay the guaranty fee owed by the lender to the Small Business Administration as part of the loan's closing costs. Otherwise, the lender may not extend the loan to the small business. The guaranty does not absolve the borrower of loan obligations. When, as today, the defaulted borrower misunderstands the nature of the Small Business Administration's guaranty to the lender and sues the Small Business Administration for not paying off his defaulted debt, we must dismiss the defaulted borrower's complaint.

### I.   Background

Thomas P. Furman alleges he paid approximately $7,300 in "premium for [a Small Business Administration] guarantee at the time of closing" on his $325,000 loan from PNC Financial Services.[1] Mr. Furman later defaulted on his loan.[2] In January 2016, PNC Bank confessed judgment against Mr. Furman in state court for $308,852.16, which includes the remaining portion of the loan, interest, fees, and costs.[3] The state court matter concluded in October 2016.[4] Neither PNC Bank nor Mr. Furman included the Small Business Administration

in the state court action.[5]

Instead, Mr. Furman filed a *pro se* complaint in Magisterial District Court in Delaware County, Pennsylvania against the Small Business Administration for refusing to guarantee the loan or acknowledge receipt of the premium."[6] He requested "return of full premium with interest," judgment of $12,000, and costs and interest from the United States Small Business Administration.[7]

## II. Analysis

The Small Business Administration removed and now moves to dismiss.[8] We grant the motion to dismiss as Mr. Furman cannot plead a breach of contract claim against the Small Business Administration arising out of his payment of a guaranty fee. Mr. Furman fundamentally misunderstands the nature of the guaranty: it is a guaranty to the lender to cover its losses on small business loans. It is not a guaranty of Mr. Furman's loan obligation to the lender.

### A. Mr. Furman fails to plead a breach of contract claim against the Small Business Administration.

Mr. Furman alleges the Small Business Administration breached a contract by failing "to guarantee the loan or acknowledge receipt of the premium" he paid for the Small Business Administration to guarantee his loan.[9] He fails to allege facts establishing he entered into a valid contract with the Small Business Administration or the Small Business Administration breached a duty it owed to him arising under a valid contract.

#### 1. Mr. Furman does not allege facts he entered into a valid contract with the Small Business Administration.

For breach of contract, Mr. Furman must plead: "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages

2

caused by the breach."[10] To pursue a breach of contract claim against a government agency, such as the Small Business Administration, a claimant must be in "privity of contract" with the government.[11] "The United States, as sovereign, is immune from suit save as it consents to be sued [...] and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."[12] The government's waiver of sovereign immunity "cannot be implied but must be unequivocally expressed."[13] The "government consents to be sued only by those with whom it has privity of contract."[14] The Small Business Administration's guarantee to a lender does not create privity between the Small Business Administration and the borrower.[15]

Absent a valid contract, the United States must explicitly waive sovereign immunity "to permit a suit against the government based on implied contractual theories such as unjust enrichment[.]"[16] "[T]here is no general waiver of sovereign immunity by the United States for unjust enrichment claims."[17]

Mr. Furman fails to plead he entered into a valid contract with the Small Business Administration. Nor can he. He pleads he entered into a contract with PNC Bank when he obtained the $325,000 loan and he breached the contract when he defaulted on the loan.[18] Mr. Furman alleges he paid $7,300 in premium for a Small Business Administration guaranty of the loan[19] but he does not plead facts he entered into and maintained a contract with the Small Business Administration. His payment of the $7,300 premium in and of itself does not create a contract with the Small Business Administration. In the absence of a valid contract with the Small Business Administration, Mr. Furman cannot satisfy the "general waiver of sovereign immunity" based on quasi-contract theories because such waivers must be explicit.[20]

## 2. Mr. Furman does not plead the Small Business Administration owed him a duty.

The Small Business Administration argues Mr. Furman "has not and cannot allege facts showing the [Small Business Administration] breached a duty that it owed to him." We agree.[21]

The Small Business Administration enters into contracts with lenders "to induce private banks to make loans to small businesses."[22] The Small Business Administration's guaranty serves as insurance for lenders, not borrowers.[23] The Small Business Administration does not act as an insurer to borrowers "such that for [a] small price [...] the [the Small Business Administration] will pay the lender [...] to cover the borrowers' losses should the borrowers' business venture, for (and often against) which the money is borrowed, go under."[24]

In *Hudson v. Sun National Bank*, the defendant borrowed money from a bank and after some time, defaulted on payments.[25] The defendant claimed the notes with the bank were "not binding contracts because [the bank] did not have a valid guarantee with the United States Small Business Administration [...] because [the bank] failed to comply with [Small Business Administration] regulations."[26] The court rejected the defendant's argument because the bank's alleged failure to comply with the Small Business Administration's regulations does not alter the agreement made between the defendant and the bank.[27]

The Small Business Administration "operates by guaranteeing loans to reduce the risk that *lenders* would ordinarily face when dealing with small businesses [...] [t]he [the Small Business Administration] *guarantees the lenders*" to protect lenders from being "left swallowing the debt left unpaid by the borrower."[28] Under 15 U.S.C. § 636(a)(18)(A), the Small Business Administration "shall collect a guarantee fee, which shall be payable by the participating lender, and may be charged to the borrower."[29] The Small Business Administration's regulations provide, "[a] [l]ender must pay a guaranty fee to [Small Business Administration] for each loan it

4

makes. If the guarantee fee is not paid, [Small Business Administration] may terminate the guarantee."[30] Once the Small Business Administration approves a loan, the lender "must pay the guaranty fee to [the Small Business Administration] electronically within 10 business days" and "may only charge the [b]orrower for the fee after the [l]ender pays the guaranty fee."[31] Borrowers benefit from the Small Business Administration's guarantee to lenders "because they are given access to loans that, presumably, banks [...] would either be unwilling to extend or that would be prohibitively expensive because the banks would have to charge enough to self-insure."[32] The Small Business Administration includes charges to lenders in exchange for the insurance it provides.[33] Lenders "typically pass the cost of that insurance on to the borrowers."[34]

The Small Business Administration is "a last resort when private funds are not available and then only to the degree necessary to induce private lenders to act."[35] In *BancOhio National Bank v. Small Business Administration*, the borrower defaulted on his loan and similarly argued the Small Business Administration acted as a "coguarantor" of the loan and failed to pay for its portion of the guarantee.[36] The court rejected the borrower's argument and found the bank's pursuit of the borrower "to be consistent with normal banking practice and reasonably within the contemplation of the parties at the time the loan was made."[37] Had the bank sought relief from the Small Business Administration "prior to the lending institution exhausting its normal collection procedures, the limited funds appropriated would be unnecessarily dissipated."[38] Even if the Small Business Administration had paid for its portion of the guarantee, it would not have helped the borrower because "if [the Small Business Administration] purchases a loan they then stand in the shoes of the bank with all the security and guarantees originally provided running to them" and the borrower would have been sued by the Small Business Administration rather than the bank.[39]

For a lender to recover on a promissory note, the lender must establish: "1) the debtor signed it, 2) the [lender] is the present holder of the note, and 3) the note is in default."[40] A lender's enjoyment of "governmental protection against the risk of default in the form of an [Small Business Association] guarantee has no bearing on [the borrower's] duty to pay amounts due under the promissory notes."[41]

Mr. Furman fails to plead facts establishing he entered into a valid contract with the Small Business Administration. The Small Business Administration's agreement with PNC Bank to guarantee its $325,000 loan to Mr. Furman in exchange for a fee is separate and independent from the contract Mr. Furman entered into with PNC Bank for the $325,000 loan. Similar to *Hudson* where the court found a bank's compliance or noncompliance with Small Business Administration's regulations does not alter the agreement made between the defendant and the bank, the Small Business Administration's refusal to guarantee the loan does not alter the agreement between Mr. Furman and PNC Bank.[42] The $7,300 in premiums charged to Mr. Furman by PNC Bank and paid to Small Business Administration satisfies 15 U.S.C. § 636(a)(18)(A),[43] and protects PNC Bank as the lender from Mr. Furman's default.[44] PNC Bank's requirement Mr. Furman pay these premiums to Small Business Administration does not alter Mr. Furman's obligations to repay the loan to PNC Bank.[45]

As a borrower, Mr. Furman is not entitled to the insurance the Small Business Administration provides lenders.[46] Mr. Furman has not alleged facts demonstrating his payment of the $7,300 in premiums imposes a duty on the Small Business Administration to him nor does he or can he allege the Small Business Administration's refusal to guarantee the loan entitles him to "return of full premium with interest."[47] Similar to the court in *BancOhio National Bank* rejecting the argument the Small Business Administration acts as a "coguarantor" of the loan in

6

the event of the borrower defaults on payment, we find Mr. Furman failed to plead the premiums he paid to Small Business Administration imposed a duty on the Small Business Administration to act as "coguarantor" of the loan he obtained from PNC Bank.[48]

### III. Conclusion

After defaulting on his loan payments, PNC Bank confessed judgment against Mr. Furman. The Small Business Administration guaranteed PNC Bank's losses. As part of his loan, Mr. Furman paid a fee required by the Small Business Administration. In the accompanying Order, we grant the Small Business Administration's motion to dismiss. Mr. Furman has not shown he entered into a valid contract with the Small Business Administration or the Small Business Administration breached a duty owed to him. He has not demonstrated privity of contract with the Small Business Administration necessary to waive sovereign immunity. He has not, and cannot, state a claim based on contract against the Small Business Administration.

---

[1] ECF Doc. No. 1 at 10.

[2] *Id.*

[3] ECF Doc. No. 5 at Exhibit 3-4.

[4] *Id.* at 2.

[5] *Id.* at Exhibit 5, 6.

[6] ECF Doc. No. 1 at 10.

[7] *Id.*

[8] ECF Doc. No. 5. In deciding a motion to dismiss under Rule 12(b)(6), we accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party, but we "are not compelled to accept unsupported conclusions and unwarranted inference, or a legal conclusion couched as a factual allegation." *Castleberry v. STI*

7

*Group*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 572 (3d Cir. 2017) (quoting *In re Vehicle Carrier Serv. Antitrust Litig.*, 846 F.3d 71, 79 n.4 (3d Cir. 2017)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Maiden Creek Assoc., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) (quoting *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[9] ECF Doc. No. 1 at 10.

[10] *San Carlos Irr. and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)(citing *Giroir v. MBank Dallas, N.A.*, 676 F.Supp. 915, 918–19 (E.D. Ark. 1987)).

[11] *Southern California Federal Sav. & Loan Ass'n v. United States*, 422 F.3d 1319, 1328 (Fed. Cir. 2005).

[12] *United States v. Sherwood*, 312 U.S. 584, 586, (1941) (citing *United States v. Thompson*, 98 U.S. 486 (1878)).

[13] *United States v. King*, 395 U.S. 1, 4 (1969).

[14] *Erickson Air Crane Co. of Wash. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984).

[15] *Six Fountain Apartments, Inc. of Bossier City v. Plus 5 Const. Corp.*, 433 F.Supp. 1284, 1285-86 (W.D. La. 1977).

[16] *Resolution Trust Corp. v. Kim*, No. 94–73768, 1996 WL 426456, at *1 (E.D. Mich. Mar. 21, 1996).

[17] *Van Dyk Mortgage Corp. v. United States*, 503 F.Supp.2d 876, 878 (W.D. Mich. 2007) (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).

[18] ECF Doc. No. 1 at 10.

[19] *Id.*

[20] *See Resolution Trust Corp. v. Kim*, No. 94–73768, 1996 WL 426456, at *1 (E.D. Mich. Mar. 21, 1996); *Van Dyk Mortgage Corp.*, 503 F.Supp.2d at 878.

[21] ECF Doc. No. 5 at 5.

[22] *Small Business Administration v. McClellan*, 364 U.S. 446, 451 (1960).

[23] *Hudson v. Sun Nat. Bank*, No. 10-6401, 2014 WL 3700147, at *3 (E.D. Pa. July 25, 2014).

[24] *Id.*

[25] *Id.* at *1-2.

[26] *Id.* at *3.

[27] *Id.*

[28] *Id.* at *3.

[29] 15 U.S.C. § 636(a)(18)(A).

[30] 13 C.F.R. § 120.220.

[31] 13 C.F.R. § 120.220(b).

[32] *Hudson*, 2014 WL 3700147, at *3.

[33] *Id.*

[34] *Id.*

[35] *BancOhio Nat. Bank v. Small Business Admin.*, 1987 WL 37611, at *2 (6th Cir. June 9, 1987).

[36] *Id.* at *1.

[37] *Id.* at *2.

[38] *Id.*

[39] *Id.*

[40] *LSREF2 Baron, LLC v. Lindsey*, No. 13-2910, 2014 WL 2158489, at *4 (W.D. La. May 22,

2014) (citing *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001)).

[41] *Regions Bank v. Gator Equipment Rentals*, LLC, 2016 WL 4429947, at * 5 (E.D. La. Aug. 22, 2016).

[42] *Hudson*, 2014 WL 3700147, at *3.

[43] 15 U.S.C. § 636(a)(18)(A).

[44] *Hudson*, 2014 WL 3700147, at *3; *Gator Equipment Rentals, LLC*, 2016 WL 4429947, at * 5.

[45] *Hudson*, 2014 WL 3700147, at *3.

[46] *Id.* at *3.

[47] ECF Doc. No. 1 at 10.

[48] *BancOhio Nat. Bank.*, 1987 WL 37611, at *1.